1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

13

14

15

JAMES B. PEWITT and ELIZABETH
C. PEWITT, as a married couple and
on behalf of others similarly situated,

                              Plaintiffs,

        v.

PEAK FORECLOSURE SERVICES
OF WASHINGTON, INC., a
Washington corporation; PEAK
FORECLOSURE SERVICES, INC., a
California corporation; and BANK OF
NEW YORK MELLON
CORPORATION, a Delaware
corporation,

                              Defendants.

NO:  2:15-CV-173-RMP

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

16

17

18

19

20

21

        BEFORE THE COURT is Defendants' Motion to Dismiss, **ECF No. 3**. The

Court has reviewed the motion, the response (ECF No. 7), the reply (ECF No. 8),

and is fully informed.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 1

**BACKGROUND**

In October 2006, Plaintiffs James B. Pewitt and Elizabeth C. Pewitt (hereinafter the "Pewitts") borrowed $477,750.00 from Mortgage Solutions Management, Inc. (hereinafter "MSM") to refinance their property in Chelan County, Washington.  ECF No. 1-1 at 20.  The Pewitts executed a promissory note (hereinafter the "Note") for the loan.  *Id.*  The Note was secured by a Deed of Trust.  *Id.* at 21.  The Deed of Trust identified MSM as the "Lender," the Pewitts as the "Borrowers," and Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS") as the "Beneficiary" under the security agreement.  ECF No. 3-1 at 2.  MSM's interest was transferred to Countrywide Home Loans Servicing LP.  ECF No. 1-1 at 20.  Countywide Home Loans was then acquired by Bank of America on or about July 1, 2008.  *Id.*  Bank of America serviced the Note until November 18, 2012, when the Note was transferred to Resurgent Mortgage Services.  *Id.* at 20–21.  On or about March 1, 2014, Shellpoint Mortgage Servicing purchased substantially all of Resurgent's assets and became the servicer of the Note.  *Id.* at 21.

The Deed of Trust noted that "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS."  ECF No. 3-1 at 3.  On June 2, 2011, MERS purported to assign "all beneficial interest under [the] Deed of Trust . . . together

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS ~ 2

1   with the note(s) and obligations therein" to the Bank of New York Mellon

2   (hereinafter "BONY").  ECF No. 3-2.

3          The Pewitts later became delinquent on their loan obligations and attempted

4   to negotiate with Bank of America for a modification of the terms of their loan.

5   ECF No. 1-1 at 22.  On or about January 8, 2014, the Pewitts received a "Notice of

6   Default and Intent to Accelerate" from Resurgent.  *Id.*  On February 4, 2015, the

7   Pewitts received from Defendant Peak Foreclosure a "Notice of Default."  *Id.* at

8   23.  The Pewitts allege that BONY substituted Peak Foreclosure as the successor

9   trustee for the Deed of Trust and directed Peak Foreclosure to initiate nonjudicial

10  foreclosure proceedings.  *Id.*  The Pewitts then referred their action to the

11  Washington State Department of Commerce for mediation.  *Id.* at 24.  The Pewitts

12  allege that they withdrew from mediation in response to BONY's failure to comply

13  with its statutory obligations to disclose certain documents. *Id.* at 25.

14         On June 2, 2015, the Pewitts filed their Complaint against Defendants in the

15  Chelan County Superior Court.  ECF No. 1-1.  The Complaint alleges causes of

16  action under the Washington State Consumer Protection Act ("CPA") against both

17  BONY and Peak Foreclosure as well as a breach of contract cause of action against

18  BONY. *Id.* at 26–37.  Defendants removed the action to this Court on July 10,

19  2015.  ECF No. 1.  Defendants filed this Motion to Dismiss on September 1, 2015.

20  ECF No. 3.  The Pewitts filed a response memorandum on September 22, 2015.

21

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 3

ECF No. 7.  Defendants filed a reply memorandum on October 6, 2015.  ECF No. 8.

## DISCUSSION

### I.    Judicial Notice of Mortgage Documents

As an initial matter, both parties ask the Court to consider several documents.  ECF No. 3 at 9 n.2; ECF No. 7 at 7 n.1.  The documents include the following: a copy of the Deed of Trust encumbering the property (ECF No. 3-1; ECF No. 6-1 at 10–34); a copy of the Assignment of Deed of Trust from MERS to BONY (ECF No. 3-2; ECF No. 6-1 at 35); and a copy of the Adjustable Rate Note (ECF No. 6-1 at 1–9).  On a Rule 12(b)(6) motion, the Court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005).  The documents presented fit within this category and may be properly considered by the Court.

### II.    Local Court Rule Violations

The Pewitts complain that Defendants' motion violated a number of this Court's Local Rules concerning spacing and font requirements.  ECF No. 7 at 3–4. Defendants concede their error and note that even if the motion had complied with the Local Rules, it would still fall within the twenty page limit for dispositive motions imposed by LR 7.1. ECF No. 8 at 3 n.2.  As the Pewitts have not suffered

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS ~ 4

any prejudice from Defendants' rule violations, the Court will not deny the motion on that basis.

### III.    Rule 12(b)(6) Legal Standard

The Federal Rules of Civil Procedure allow for the dismissal of a complaint where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss brought pursuant to this rule "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing the sufficiency of a complaint, a court accepts all well-pleaded allegations as true and construes those allegations in the light most favorable to the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV.    CPA Causes of Action

To maintain a CPA cause of action, a plaintiff must allege: (1) an unfair or deceptive act or practice by a defendant; (2) occurring in trade or commerce; (3) an impact on the public interest; (4) injury to the plaintiff's business or property; and (5) that the defendant's alleged unfair or deceptive act caused plaintiff's injury.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS ~ 5

1    *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778,

2    784–85 (1986).

3        Defendants argue that the Pewitts' CPA allegations are predicated on two

4    distinct sets of unfair or deceptive acts: (1) that Defendants initiated foreclosure

5    proceedings against the Pewitts when they knew or should have known that BONY

6    was not the owner or holder of the Note nor the lawful beneficiary of the Deed of

7    Trust and (2) that Defendants violated certain provisions of the Washington State

8    Deed of Trust Act in connection with the foreclosure proceedings.  ECF No. 3 at 6.

9    The Pewitts do not dispute this characterization of their complaint.  *See* ECF No. 7.

10   As Defendants organize their Motion to Dismiss around this characterization of the

11   Pewitts' CPA causes of action, the Court will analyze Defendants' arguments

12   through that lens for the purpose of this Order.

13       Defendants attack both sets of alleged unfair or deceptive acts on separate

14   grounds.  In doing so, Defendants aim to demonstrate that neither theory can

15   support the Pewitts' CPA causes of action, thereby warranting dismissal.

16   Defendants argue that the Pewitts' CPA causes of action predicated upon the

17   transfer to BONY must be dismissed because (1) the Pewitts' claim that BONY

18   was neither the holder of the Note nor the lawful beneficiary of the Deed of Trust

19   fails as a matter of law and (2) the Pewitts have failed to plead sufficient facts

20   demonstrating that, even if the transfer to BONY was ineffective, they suffered any

21   injury as a result.  ECF No. 3 at 6–11.  Defendants argue that the Pewitts' CPA

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 6

causes of action predicated upon the alleged violations of the Washington State

Deed of Trust Act must be dismissed because the Pewitts have failed to plead

sufficient facts demonstrating an impact on the public interest. *Id.* at 11–12.

### A. Whether the Pewitts Plausibly have Alleged that BONY was Not the Lawful Holder or Beneficiary of the Note

The Supreme Court of Washington addressed MERS' role as a purported

deed of trust beneficiary in *Bain v. Metropolitan Mortgage Group, Inc.*, 175 Wn.2d

83 (2012).  In *Bain*, as here, MERS was named as beneficiary and nominee in the

deed of trust.  *Id.* at 89.  The court noted that "the deed of trust act has defined a

'beneficiary' as 'the holder of the instrument or document evidencing the

obligations secured by the deed of trust.'"  *Id.* at 98 (quoting RCW 61.24.005(2)).

Thus, as "MERS never held the promissory note . . . it is not a lawful beneficiary."

*Id.* at 99 (internal quotation marks omitted).  As the court concluded, "if MERS is

not the beneficiary as contemplated by Washington law, it is unclear what rights, if

any, it has to convey."  *Id.* at 111.

After concluding that MERS was an ineligible beneficiary, the court

addressed the potential agency relationship between MERS, the lender, and

successive noteholders. *Id.* at 106.  "[A]n agency relationship results from the

manifestation of consent by one person that another shall act on his behalf and

subject to his control, with a correlative manifestation of consent by the other party

to act on his behalf and subject to his control."  *Id.* (quoting *Moss v. Vadman*, 77

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 7

1    Wn.2d 396, 402–03 (1970)).  "[A]gency requires a specific principal that is

2    accountable for the acts of its agents."  *Id.* at 107.

3        MERS argued that it transferred the Note as an agent for the lender.  The

4    court observed, however, that MERS' "principals . . . remain unidentified."  *Id.*

5    The deed of trust described MERS as "acting solely as a nominee for Lender and

6    Lender's successors and assigns."  *Id.* (quoting Doc. 131–2 at 2 (Bain deed of

7    trust)).  While the Supreme Court of Washington noted that MERS *could* act as an

8    agent, *Bain* found that the deed of trust language did not automatically create such

9    a relationship with successive noteholders.  *Id.*  The court noted that "MERS offers

10   no authority for the implicit proposition that the lender's nomination of MERS as a

11   nominee rises to an agency relationship with successor noteholders."  *Id.*  As such,

12   this language in a deed of trust does not, without more, create an agency

13   relationship between MERS, its transferees, and noteholders.

14       The Pewitt and *Bain* deeds of trust contain identical language concerning

15   MERS' role as a beneficiary and nominee.  The Pewitts' Deed of Trust states that

16   "MERS is a separate corporation that is acting solely as a nominee for Lender and

17   Lender's successors and assigns."  ECF No. 3-1 at 2.  This is the same language

18   the Supreme Court of Washington held did not implicitly create an agency

19   relationship between MERS and subsequent noteholders.  *Bain*, 175 Wn.2d at 107.

20       As the Pewitts' Deed of Trust contains identical boilerplate language as in

21   *Bain*, the Court cannot find as a matter of law that MERS had agency authority to

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 8

transfer the Note to BONY.  Although the Deed of Trust discusses MERS having

the right to exercise a lender's interests as nominee, ECF No. 3-1 at 4, *Bain* held

that such language was not enough, by itself, to create an agency relationship.

*Bain*, 175 Wn.2d at 107.  Further, the Assignment of Deed of Trust makes no

mention of MERS acting as an agent for the lender.  ECF No. 3-2.  Instead, MERS

seemingly purports to be the noteholder itself.  *Id.*  Finally, the Adjustable Rate

Note does not mention MERS at all.  ECF No. 6-1 at 1–9.  Although the Note

states that "I understand that Lender may transfer this Note," *id.*, there is no

indication that MERS was or would be acting as an agent for the lender or any

successive noteholder.

     *Bain* explicitly held that MERS is an ineligible beneficiary and, as such, any

transfer to BONY can only be legitimized if MERS was acting as the noteholder's

agent.  Defendants have not demonstrated that MERS had the agency authority to

transfer the Note and Deed of Title to BONY as a matter of law.  If BONY was not

the holder of the Note, it would similarly not have had authority to appoint Peak

Foreclosure as trustee to initiate foreclosure proceedings.  The Pewitts have made a

plausible allegation that MERS may not have had authority to orchestrate the

transfer, which would result in a trickledown dispute as to both BONY and Peak

Foreclosure's authority to initiate foreclosure proceedings.

     Defendants argue that a series of decisions from the District Court for the

Western District of Washington have addressed identical claims as the Pewitts

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 9

allege here. ECF No. 3 at 7–8.  The Court finds these decisions to be distinguishable or unpersuasive.  In *Wilson v. Bank of America, N.A.*, C12-1532 JLR, 2013 WL 275018 (W.D. Wash. Jan. 24 2013), the court noted that the plaintiffs "make the conclusory allegation that MERS did not have the authority to transfer the Deed of Trust . . . because of their unsupported legal conclusion that '[a] nominee of the owner of the note and mortgage may not effectively assign the note to another for want of an ownership interest in said note by nominee.'" *Id.* at *8 n.9.  However, as discussed above, the Court finds that the Deed of Trust does not automatically legitimize the transfer to BONY as a matter of law.  As the Pewitts have plausibly alleged that MERS did not have authority to transfer the Note, the Court finds *Wilson* distinguishable.

In *Zhong v. Quality Loan Service Corp. of Washington*, C13-0814 JLR, 2013 WL 5530583 (W.D. Wash. Oct. 7, 2013), the court noted that "Ms. Zhong cites no authority for her assertion that MERS is incapable of transferring its interest in a deed of trust." *Id.* at *3.  Again, as the Court finds that the Pewitts have made a plausible allegation concerning MERS' ability to transfer any interest to BONY, the Court declines to follow *Zhong*.

Finally, in *Andrews v. Countrywide Bank, N.A.*, C15-0428 JLR, 2015 WL 1487093 (W.D. Wash. April 1, 2015), the court noted that

> [t]he Andrews have not demonstrated any basis for their challenge to MERS's eligibility to assign the deed of trust. Although MERS is not an eligible beneficiary under the DTA, MERS may act as an agent of

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS ~ 10

> the note-holder. Here, the deed of trust designates MERS as a beneficiary "acting solely as a nominee for Lender and Lender's successors and assigned." The Andrews cite no authority for their contention that MERS is incapable of transferring its interest in a deed of trust.

*Id.* at *3. *Andrews* is correct that, based on *Bain*, MERS potentially can be an agent for the noteholder.  However, the deed of trust at issue in *Andrews* contained the same language analyzed in *Bain* and present in the Pewitts' Deed of Trust.  *See Bain*, 175 Wn.2d at 107 (noting that "the deeds of trust . . . describe MERS as 'acting solely as a nominee for Lender and Lender's successors and assigns'"); *Andrews*, 2015 WL 1487093, at *3 (noting that the "deed of trust designates MERS as beneficiary 'acting solely as a nominee for Lender and Lender's successors and assigns'"); ECF No. 3-1 at 2 ("MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.").

As discussed above, *Bain*, when construing this language, noted that "MERS offers no authority for the implicit proposition that the lender's nomination of MERS as a nominee rises to an agency relationship with successor noteholders." *Bain*, 175 Wn.2d at 107.  As the Supreme Court of Washington has held that such language is *not*, by itself, sufficient to create an agency relationship between

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS ~ 11

1  MERS and successor noteholders, *see id.*, the Court does not find *Andrews*

2  persuasive where it relies upon this same boilerplate phrasing.

3      Based on the above, the Court rejects Defendants' first argument for

4  dismissal of the CPA causes of action.

### B. Whether the Pewitts have Pleaded Sufficient Facts Demonstrating an Injury Caused by Defendants' Allegedly Unlawful Transfer

6      Defendants argue that, even assuming the transfer to BONY was invalid, the

7  Pewitts have failed to plead facts demonstrating that the invalid transfer caused

8  them any injury.  ECF No. 3 at 10.  Defendants base this argument on the idea that

9  BONY's purported status as an invalid beneficiary had no causal nexus to the

10  eventual foreclosure.  *Id.*  The Pewitts respond that they have pleaded "injury to

11  their property in an amount to be proven at trial."  ECF No. 7 at 15 (quoting ECF

12  No. 1-1 at 29, 36).

13      The Court finds that the Pewitts have alleged sufficient facts to plausibly

14  demonstrate injury to property.  The Pewitts note that "[t]he unlawfully recorded

15  Notice of Trustee's Sale placed a public stigma on the Pewitt's [*sic*] residence,

16  reducing its fair market value to an amount less than its value prior to the Notice's

17  recordation."  ECF No. 1-1 at 24–25.  Under the CPA, "[t]he injury involved need

18  not be great."  *Hangman*, 105 Wn.2d at 792.  The "injury requirement is met upon

19  proof the plaintiff's 'property interest or money is diminished because of the

20  unlawful conduct even if the expenses caused by the statutory violation are

21

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 12

1   minimal.'" *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57 (2009)

2   (quoting *Mason v. Mrtg. Am., Inc.*, 114 Wn.2d 842, 854 (1990)).  The Pewitts'

3   alleged reduction of fair market value is a sufficiently plausible allegation of injury

4   to property under Rule 12(b)(6).

5        Further, "[i]nvestigative expenses, taking time off from work, travel

6   expenses, and attorney fees are sufficient to establish injury under the CPA."

7   *Walker v. Quality Loan Serv. Corp.*, 176 Wn. App. 294, 320 (2013); *see also*

8   *Knecht v. Fidelity Nat'l Title Ins. Co.*, C12-1575 RAJ, 2014 WL 4057148, at *9

9   (W.D. Wash. Aug. 14, 2014) (noting that "[i]f a jury concludes that DB had no

10  authority to foreclose, then a trier of fact could infer that the cause of [plaintiff's]

11  need to investigate was DB's wrongfully-initiated foreclosure proceedings").

12  *Knecht* found that investigative expenses were an injury under the CPA despite the

13  defendants' argument that "the cause of Mr. Knecht's injury was his default, not

14  their wrongdoing."  *Id.*  In addition to injury to property, the Pewitts have pleaded

15  that they incurred investigation expenses, expenses from taking time off from

16  work, travel expenses, and attorney fees.  ECF No. 1-1 at 29.  These allegations are

17  also sufficient to show a plausible allegation of injury under the CPA.  Further, as

18  in *Knecht* and as pleaded by the Pewitts, these injuries would plausibly have been

19  caused by the Defendants' allegedly wrongful foreclosure.  The Court concludes

20

21

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 13

that the Pewitts have pleaded sufficient facts to allege an injury from Defendants'

allegedly unlawful and ineligible transfer of the Note and Deed of Title.

### C. Whether the Pewitts have Pleaded Sufficient Facts Demonstrating an Impact on the Public Interest from Defendants' Alleged Violations of the Washington Deed of Trust Act

Defendants argue that the Pewitts' alleged unfair or deceptive acts stemming

from technical violations of the Washington Deed of Trust Act fail under Rule

12(b)(6) as the Pewitts "plead no facts which demonstrate an impact on the public

interest." ECF No. 3 at 11.  To the contrary, the Pewitts' complaint states that

> [BONY]'s unfair or deceptive acts impacted the public interest in that the unfair or deceptive acts were committed in the course of [BONY]'s business and as part of a pattern or generalized course of conduct where the same or similar unfair or deceptive acts were repeated by [BONY] prior to the above-listed unfair or deceptive acts. Further, there exists a real and substantial potential for repetition of [BONY]'s conduct in the future in that the above-listed unfair or deceptive acts are part of [BONY]'s pattern or generalized course of conduct.

ECF No. 1-1 at 29; *see also id.* at 35–36 (same concerning Peak Foreclosure).

Further, the Pewitts pleaded that "Defendants [*sic*] actions are part of their

respective common course of conduct and have caused similar damages to possibly

thousands of other [*sic*] in Washington State."  *Id.* at 12.  Although the Pewitts do

not allege a specific number of similarly harmed parties, they do note that BONY

"is one of the largest lenders and/or beneficiaries of deeds of trust in the nation, as

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS ~ 14

1    well as in the state of Washington" and that "Peak Foreclosure is one of the largest

2    providers of default servicing solutions in Washington State."  *Id.* at 16.

3          When determining whether an alleged unfair or deceptive act has an impact

4    on the public interest, the Court must consider the following factors: "(1) [w]ere

5    the alleged acts committed in the course of defendant's business?; (2) [d]id

6    defendant advertise to the public in general?; (3) [d]id defendant actively solicit

7    this particular plaintiff, indicating potential solicitation of others?; [and] (4) [d]id

8    plaintiff and defendant occupy unequal bargaining positions?" *Hangman*, 105

9    Wn.2d at 790–91.  "[N]ot one of these factors is dispositive, nor is it necessary that

10   all be present." *Id.* at 791.

11         In *Bain*, the Supreme Court of Washington found that "there is considerable

12   evidence that MERS is involved with an enormous number of mortgages in the

13   country (and our state), perhaps as many as half nationwide.  If in fact the language

14   is unfair or deceptive, it would have a broad impact." *Bain*, 175 Wn.2d at 118.

15   Although the alleged violations of the Deed of Trust Act are specific to the

16   Pewitts' mortgage and subsequent foreclosure, the Pewitts have alleged that

17   BONY and Peak Foreclosure committed these violations as part of their general

18   course of conduct as large corporations in the mortgage and foreclosure industries.

19   ECF No. 1-1 at 16, 29, 35–36.  Similar to *Bain*'s analysis of MERS, the alleged

20   violations of the Deed of Trust Act, if unfair or deceptive, could have a broad

21   impact on other mortgagors.  The Pewitts have pleaded sufficient facts showing a

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 15

plausible impact of the alleged deceptive or unfair violations of the Deed of Trust

Act on the public at large.

Defendants argue that the alleged violations of the Deed of Trust Act affect

no one but the Pewitts and therefore do not impact the public interest.  However, at

the Rule 12(b)(6) stage, a plaintiff must only demonstrate that their claim is

plausible to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678.  The Pewitts

allege that Defendants committed these violations in their course of business. ECF

No. 1-1 at 29, 35–36.  Defendants' citation to *Shugart v. GYPSY Official No.*

*251715*, 2:14-CV-1923 RSM, 2015 WL 1965375 (W.D. Wash. May 1, 2015), is

unavailing. In *Shugart*, the court found that "Defendants' Answer and

Counterclaim is devoid of any facts sufficient to meet the public interest prong."

*Id.* at *3.  As the Pewitts have pleaded facts indicating that the Defendants'

conduct extended beyond the Pewitts' mortgage and foreclosure, the instant case is

distinguishable from *Shugart*.  Although the Pewitts will have to provide further

evidence concerning the extent of BONY and Peak Foreclosure's operations to

prevail at trial, the Pewitts have pleaded sufficient facts to allege a plausible impact

on the public interest under Rule 12(b)(6).

## V.    Breach of Contract Cause of Action

BONY argues that the Pewitts' breach of contract cause of action must be

dismissed because (1) the Pewitts have failed to allege the breach of a specific

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 16

1    contractual term and (2) the Pewitts' own breach of the Deed of Trust precludes

2    them from asserting a breach of contract action.  ECF No. 3 at 12–14.

3        "A breach of contract is actionable only if the contract imposes a duty, the

4    duty is breached, and the breach proximately causes damage to the claimant." *Nw.*

5    *Indep. Forest Mfrs. v. Dep't of Labor and Indus.*, 78 Wn. App. 707, 712 (1995).

6    "Although there is a duty of good faith and fair dealing implied in all existing

7    contracts, we have consistently held there is no 'free-floating' duty of good faith

8    and fair dealing that is unattached to an existing contract." *Keystone Land & Dev.*

9    *Co. v. Xerox Corp.*, 152 Wn.2d 171, 177 (2004).  The duty exists only "in relation

10   to performance of a specific contract term." *Badgett v. Sec. State Bank*, 116 Wn.2d

11   563, 570 (1991); *see also Donald B. Murphy Contractors, Inc. v. King Cty.*, 112

12   Wn. App. 192, 197 (2002) ("A duty of good faith and fair dealing is deemed to

13   exist in every contract, but it arises only in connection with the performance of

14   specific contract obligations.  If no contractual duty exists, there is nothing that

15   must be performed in good faith.").

16       The Pewitts argue that BONY violated Paragraph 16 of the Deed of Trust,

17   ECF No. 7 at 18–19, which states that "[t]his Security Instrument shall be

18   governed by federal law and the law of the jurisdiction in which the Property is

19   located. All rights and obligations contained in this Security Instrument are subject

20   to any requirements and limitations of Applicable Law."  ECF No. 3-1 at 12.  The

21   Pewitts argue that this provision imposes on BONY "an express duty to comply

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 17

with Washington law in enforcing its rights under the Deed of Trust and an implied

duty of good faith and fair dealing in so enforcing." ECF No. 7 at 19.

The Court does not agree with the Pewitts' interpretation of Paragraph 16.

Paragraph 16 is titled "Governing Law, Severability, Rules of Construction."  ECF

No. 3-1 at 12.  It is merely a choice-of-law provision that does not impose any

additional or independent contractual rights or duties.  Other courts interpreting

identical contract provisions have reached the same conclusion.  *See Uzodinma v.*

*JPMorgan Chase Bank, N.A.*, 3:13-CV-5010-L, 2014 WL 4055367, at *4 (N.D.

Tex. Aug. 14, 2014) ("These paragraphs outline the governing law of the Deed of

Trust.  This language does not imply that if a party to the contract violates a state

or federal law, it also breaches the contract . . . This argument yields an absurd

result, as any violation of any state or federal law would automatically be a breach

of contract, and is not reflected in the language of the Deed of Trust."); *Girgis v.*

*Countrywide Home Loans, Inc.*, 1:10-CV-00590, 2010 WL 4365884, at *7 (N.D.

Ohio Oct. 28, 2010) (noting that "the choice of law provision is meant to dictate

the law that will govern disputes related to the mortgage—it is not meant to

incorporate the law at large").  This understanding is confirmed by Washington

State contract principles.  *See Boguch v. Landover Corp.*, 153 Wn. App. 595, 615

(2009) ("If a party alleges breach of a duty imposed by an external source, such as

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 18

a statute or the common law, the party does not bring an action on the contract,

even if the duty would not exist in the absence of a contractual relationship.").

The Pewitts' complaint alleges that a wide-ranging slew of BONY's actions

were not in good faith, did not constitute fair dealing, and were not in compliance

with Washington State law.  ECF No. 1-1 at 30–34.  However, as correctly noted

by Defendants, the complaint never alleges a violation of a specific provision of

the Deed of Trust.  ECF No. 3 at 13.  Under Washington State contract law, an

allegation that a party breached the duty of good faith and fair dealing must be in

relation to a specific provision of the contract.  *See Badgett*, 116 Wn.2d at 570.  As

the Pewitts have failed to allege that BONY breached these duties in relation to

any specific provision of the Deed of Trust, the Court finds that the Pewitts have

not pleaded sufficient facts to maintain their breach of contract action.

Further, under Washington State contract law, "[i]f a contract requires

performance by both parties, the party claiming nonperformance of the other must

establish as a matter of fact the party's own performance."  *Willener v. Sweeting*,

107 Wn.2d 388, 394 (1986).  The Supreme Court of Washington also has noted

that "[i]t is true that one who seeks to enforce the terms of a contract against

another or to recover damages for the breach of a contract by another must show

that there has been no breach on his own part."  *Downs v. Smith*, 169 Wn. 203, 206

(1932).  Here, the Pewitts admitted that they "became delinquent on their loan

obligations."  ECF No. 1-1 at 22.  As correctly noted by Defendants, the Pewitts'

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 19

1  admission of their own breach and non-performance precludes them from asserting

2  a breach of contract action against BONY.  *See* ECF No. 3 at 13.

3       The Pewitts' counterarguments are unavailing.  The Pewitts cite *State v.*

4  *Trask*, 91 Wn. App. 253 (1998), for the proposition that "[t]he nonperformance

5  (breach) of a promise made by A does not necessarily excuse the performance of a

6  different promise made by B . . . A's nonperformance (breach) renders A liable for

7  damages; it does not, however, excuse B's performance of the other promise." *Id.*

8  at 273.  The Pewitts however conflate the separate issues of whether BONY was

9  excused from performing under the Deed of Trust and whether the Pewitts can

10  maintain a breach of contract cause of action.  The Pewitts' breach may not excuse

11  BONY's performance, but it does strip the Pewitts of their ability to seek money

12  damages through a breach of contract cause of action.

### VI.  Leave to Amend Complaint

14       In the Ninth Circuit, "a district court should grant leave to amend even if no

15  request to amend the pleading was made, unless it determines that the pleading

16  could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

17  F.3d 1122, 1130 (9th Cir. 2000).

18       The Court finds that leave to amend would be futile under these

19  circumstances.  As discussed above, the Pewitts' breach of the Deed of Trust strips

20  them of the ability to bring a breach of contract action against BONY.  Any

21  opportunity to amend the complaint would be futile, as no amendment can alter the

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 20

1  Pewitts' admission concerning their default.  As such, the Court will not grant the

2  Pewitts leave to amend their complaint and their breach of contract cause of action

3  is dismissed with prejudice.

4      Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to

5  Dismiss, **ECF No. 3**, is **GRANTED IN PART AND DENIED IN PART**.  The

6  Pewitts' breach of contract cause of action is **dismissed with prejudice**.

7      The District Court Clerk is directed to enter this Order and provide copies to

8  counsel.

9      **DATED** this 4th day of November 2015.

10

11          *s/ Rosanna Malouf Peterson*
          ROSANNA MALOUF PETERSON
12          Chief United States District Judge

13

14

15

16

17

18

19

20

21

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS ~ 21